INDEPENDENT CONSOL. SCHOOL DIST. NO. 7 et al. v. BOWEN, County Supt.

No. 32762.   July 1, 1947.

*183 P. 2d 251.*

Dudley, Duvall & Dudley, of Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., James W. Bounds, Asst. Atty. Gen., and Walter F. Hill, Co. Atty., of Chandler, for defendant in error.

WELCH, J.   This is an action by independent consolidated school district No. 7 of Harrah, Okla., and its official board, against Dora Bowen, county superintendent of public instruction, Lincoln county, Okla., to restrain and enjoin defendant from issuing an order annexing Center school district No. 116 to plaintiff school district.

There is no dispute in the evidence. It was stipulated that there were 40 qualified electors in district No. 116; that an election was called and held in district No. 116 for the purpose of voting on the question of annexation; that

23 votes were cast, 19 for annexation and four against annexation; that defendant posted notice of the results of the election as provided by statute.

Evidence was introduced relative to the valuation of the taxable property and number of pupils in district No. 116 and the probable cost of hiring an additional school bus and employing an additional teacher in plaintiff district, all tending to show a probable increase in the tax rate in plaintiff district in the event of annexation of district No. 116.

Judgment was in favor of defendant, and plaintiffs appeal.

All assignments of error are argued under four propositions of law.

Plaintiff first asserts that:

"The power of the Legislature to establish and maintain a public school system, vested in it by Section 1, Article XIII, of the Constitution, must be construed with, and is restricted by, the constitutional limitations respecting the indebtedness of school districts and taxation upon property located therein."

This proposition is submitted as a preliminary matter in order to lay a predicate for the argument presented on the other propositions.

It is next proposed that:

"Section 7(a), Ch. 24, Session Laws 1943 (70 O.S.A. §891.7(a), is unconstitutional and void in that it places upon annexing school districts an indebtedness in excess of the income and revenue provided for the fiscal year, without the consent of three-fifths of the voters of the annexing district, in violation of Section 26, Article X, of the Constitution."

The said section 7(a) in part provides:

"The district to which the annexation is made shall become the owner of all the property and other assets of the annexed district (except so much of the sinking fund as may be necessary to pay any bonded indebtedness existing in the annexed district at the time of annexation) and shall be liable for the current debts and other obligations of the annexed district. . . ."

Section 26, art. 10 of the Constitution provides, in part, as follows:

"No county, city, town, township, school district, . . . shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. . . ."

No proof is offered to show that an indebtedness or obligation in excess of its current income and revenue is imposed upon plaintiff by the annexation.

It is urged that the 1943 Act of the Legislature by its terms creates a debt against the annexing district without the assent of the voters of that district; that the current debts and other obligations of the annexed district become the obligation and must be paid by the annexing district; that the funds set up under existing laws to finance and operate a school district provide nothing for such a contingency; that regardless of how great the assets transferred a debt is created in excess of the income and revenue provided for the annexing district in violation of section 26, art. 10 of the Constitution; that the annexing district is not authorized by law to deal in the assets of another district and could not use assets transferred in payment of obligations of the annexed district, but would be forced to pay such obligation from the funds of the annexing district.

The 1943 Act provides specifically that the annexing district does not assume any part of the bonded indebtedness of the annexed district. This is a form of indebtedness which would ordinarily require levies of taxes reaching into ensuing fiscal years. The constitutional inhibition is against the assumption of indebtedness **in any year** in excess of the income and revenue for such year without the assent of three-fifths of the voters.

The statutes do not authorize the in-

curring of any debt or obligation in any school district in any year in excess of the income and revenue provided for that year except bonded indebtedness.

Section 7(a) of the Act makes no reference to obligations assumed by the annexing district other than the current debts and other obligations of the annexed district. The current debts and other obligations of the school district in the light of the exception noted (bonded indebtedness) clearly means the obligations already incurred, and the obligations expected to arise, in meeting current expenses which are the ordinary, regular and continuing expenditures for the maintenance of the school property and the carrying on of the school work during each fiscal year's operation. By statute no valid obligation for the current expenses of a particular fiscal year can be created except within the limits of the income and revenue provided for that fiscal year. The statutes compel a balance between current obligations assumed and current appropriations.

It is true that a mere possibility exists that through malfeasance, failure of tax collection, or for other reasons, the current debts and other obligations of a particular fiscal year might not be discharged by the income and revenue provided for that year resulting in an indebtedness for which revenues must be provided in ensuing years, but the statutes by their terms provide that no obligations can be assumed in any year except in an amount equal to the income and revenue provided for that year (excepting bonded indebtedness) and it cannot be said that the assumption of an annual budget is the assumption of an indebtedness in that year in excess of the income and revenue provided for that year.

Section 7(a) provides that at the time of annexation the annexing district becomes the owner of all the property and other assets of the annexed district except certain sinking funds. Section 8 of the Act provides that any school district annexed to another district becomes a part of the district to which annexed and shall be governed by all laws relating to such district, except as to bonded indebtedness.

Sections 7(a) and 8 clearly authorize and impose upon the annexing district the responsibility of administering the affairs and budget of the annexed district during the balance of the fiscal year within which annexation is made and they authorize the use of the income and revenue received from the annexed district in the discharge of the current debts and other obligations of the annexed district.

It seems rather clear that said section 7(a), though it provides that "the district to which the annexation is made shall . . . be liable for the current debts and other obligations of the annexed district" (except bonded indebtedness), does not by its terms place an indebtedness upon the annexing district in excess of the income and revenue provided for a particular year in violation of section 26, art. 10 of the Constitution, for it is also provided that the annexing district shall assume ownership and control of the income and revenue provided for the annexed district, and such assets are by statute in balance with the obligations of the annexed district for that particular year.

In proposition 3 plaintiff asserts that chapter 24, Title 70, Session Laws 1943, violated the "Due Process" clause of the State Constitution, and is therefore invalid.

Evidence was introduced tending to show that upon annexation plaintiff district would be required to provide an additional school bus and teacher; that the cost thereof would be in excess of the revenue that could be derived from the application of plaintiff district's present tax rate to the annexed district's property valuation; that the spreading of the total cost over the whole area would result in an increase of the tax rate in plaintiff district.

Plaintiff contends that as interested

parties from the standpoint of tax liability created by annexation, plaintiff district and the property owners therein are denied due process by failure of the Legislature, in the enactment of the annexation law, to provide for an appeal from the order of annexation.

In its brief plaintiff states:

"In urging this matter, we rely upon the decision of this court in the case of School District No. 37, Washita County, v. Latimer, 190 Okla. 620, 126 P. 2d 280."

In that case an action for injunction was brought by the district about to be annexed against the county superintendent to prevent an order of annexation under the provisions of the 1941 Act relating to school district annexations. That act provided for an appeal by the parties to the district court, but limited the jurisdiction of the court to the determination of whether the provisions of the act had been substantially complied with. It was contended that since the court's functions were so limited the parties were denied full judicial review of the superintendent's orders. It was held that the appeal authorized by the 1941 Act afforded the interested parties an opportunity for full and complete judicial review of such order. See paragraph 1 of the syllabus. In the body of the opinion it was said:

". . . The Legislature may at will create, alter or abolish school districts without consulting the inhabitants thereof. The people may be denied a voice in the matter, and denied the right of appeal. The statute itself is the basic and fundamental law, and a substantial compliance therewith by the ministerial officers constitutes due process. . . ."

Following this expression it was said:

". . . However, any attempt on the part of the Legislature to deny interested parties the right to a judicial determination of the question whether the provisions of the act have been complied with would constitute a denial of due process of law. In event the Legislature should fail to provide an adequate remedy in such case, the parties could resort to injunction to test the validity of the order. 'But where an efficient and speedy remedy is provided, injunction will not lie."

Plaintiff emphasizes the language in the first sentence of this second quotation, but makes no claim that the trial court herein refused to make a determination of the question whether the provisions of the instant act had been complied with, nor is it suggested that the instant act in any of its terms attempts to prevent the court's consideration of these questions on an application for injunction.

Following the above quotations in the Latimer Case, it was said:

"In Dowell v. Board of Education, 185 Okla. 342, 91 P. 2d. 771, where a similar question was involved, . . . the rule was stated as follows:

" 'School districts being subordinate agencies of the state in which the inhabitants thereof have no vested property rights, article 9, ch. 34, S.L. 1937, does not violate the due process clause of the State Constitution (sec. 7 of art. 2) . . . in failing to authorize the inhabitants of the independent district to which territory is attached to vote on the question of attachment or provide for an effective appeal from the order of attachment.' "

That rule also applies to the statute here under consideration.

In proposition 4 plaintiff asserts that:

"A majority of the qualified electors of Center school district No. 116 did not approve the proposed annexation, and the trial court thus erred in concluding that the defendant was authorized under the statute to make the order of annexation to the plaintiff district."

At the election, in Center school district No. 116, 19 votes were cast in favor of annexation and four against. There were 40 qualified electors residing in said school district at that time.

Plaintiff contends that at least 21 favorable votes were required before

defendant was authorized to make an order of annexation.

Section 5 of the 1943 Act (70 O.S.A. 1943, §891.5) provides for the making of an order of annexation in the event the question of annexation shall receive a majority vote.

Section 1 of the 1943 Act provides that annexation of an entire school district may be accomplished "at an election if a majority of the legal voters of the district affected shall approve such action." The phrase "of the district affected" modifies the word "voters" and does not extend the meaning of the word "majority". As said in the syllabus of Goodwin et al. v. Union Graded School District No. 4 et al., 181 Okla. 382, 74 P. 2d 601:

"A statute which provides that changes may be made in the affairs of a school district 'by a majority vote of the school electors living in the area of the school district' means a majority of those electors who vote at the election, and not a majority of **all** of the electors in said district."

And the following language from the body of that opinion is applicable here:

"It will be noticed that the sections quoted do not contain the word 'all' in defining the electorate, a majority of which must act affirmatively.

" . . . 9 R. C. L. 1116, paragraph 117, states the rule correctly, . . . 'Voters not attending the election or not voting on the matter submitted are presumed to assent to the expressed will of those attending and voting, unless the law providing for the election declares otherwise.' "

Section 1 authorizes annexation at an election, but does not provide for the election.

Sections 3 and 4 provide that following "the receipt of a petition signed by fifty (50%) per cent of the legal voters of the district . . . proposed to be annexed, the county superintendent shall" give notice and conduct an election.

Section 5 provides "within five (5) days after said election the county superintendent shall post in five (5) public places the result of said election. In the event the question of the annexation shall receive a majority vote the county superintendent shall . . . make an order carrying into effect the annexation."

The word "vote" as used means the expression of the voter and the word "majority" vote means the expression of the majority of those present and voting at said election. It was so held in Crusan v. Kirk, 199 Okla. 45, 181 P. 2d 842.

At the election a majority of the votes cast being in favor of annexation, the defendant was authorized to make the order.

The judgment is affirmed.