Mary MORTON and Carrie
Philpott, Appellants,

v.

The ADAIR COUNTY EXCISE BOARD
and The Adair County
Commissioners, Appellees.

No. 72181.

Supreme Court of Oklahoma.

Sept. 19, 1989.

Gary R. Buckles, Asst. Dist. Atty., Le-Flore County, Poteau, for appellants.

Gerald Hunter, Dist. Atty. and D.K. Cunningham, Asst. Dist. Atty., Sequoyah County, Sallisaw, for appellees.

Robert H. Henry, Atty. Gen. and Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for State Election Bd. as amicus curiae.

OPALA, Vice Chief Justice.

The dispositive question is whether, in the process of reducing county office budgets to meet revenue shortfall, preference for funding should be given to a statutorily mandated position of county election board's chief clerk, whose specific duties *no one else* is required or permitted to perform, over the county purchasing agent, whose responsibilities, when no one holds that job, must, by force of law, be discharged by an elected county official—the county clerk. Although we answer in the affirmative, we are compelled to affirm the trial court's refusal to issue the writ because *no* effective relief is now available to the appellants.

## THE ANATOMY OF LITIGATION

The plaintiffs, Mary Morton [Morton], secretary of the county election board [election board], and Carrie Philpott [Philpott], the election board's chief clerk, sought a writ commanding the county excise board [Board] to restore funding for the chief clerk's position which had been withheld in the fall of 1988, shortly after Adair County experienced a revenue shortfall. Trimming the budgets of the various county officers and agencies, the Board reduced mileage and maintenance expenses and withheld funding for some personnel. Among other items, the Board eliminated funding for all the chief clerks or chief assistants of the county officers and agencies. The position of county purchasing agent remained unaffected by the budget reductions.

Morton and Philpott assert the Board did not follow the statutory scheme for trimming county budgets in the face of revenue shortage. They argue the Board has a duty to fund the legislatively mandated position of election board's chief clerk so long as a purchasing agent's position remains as a funded budgetary expense item separate from the salary of the county

clerk. The agent's job, they urge, must be eliminated first.[1]

## I

### MANDAMUS

Mandamus, a remedy of an extraordinary nature,[2] is governed by the terms of 12 O.S.1981 §§ 1451 and 1452.[3] Before a writ of mandamus may issue there must be (1) a clear legal right vested in the petitioner, (2) respondent's refusal to perform a plain legal duty which does not involve the exercise of discretion and (3) adequacy of the writ and inadequacy of other relief.[4] A writ will issue when the action sought to be compelled is purely ministerial because the officer or board, when properly requested to do so, has a mandatory duty to act that stands imposed by law.[5] While mandamus will not ordinarily be allowed to control or compel performance of a duty requiring the exercise of discretion, it may issue to compel action

when one which the respondent has taken was erroneous or arbitrary.[6]

## II

### FUNDING FOR THE ELECTION BOARD'S CHIEF CLERK POSITION MAY NOT BE WITHHELD SO LONG AS THE PURCHASING AGENT'S POSITION REMAINS IN THE FUNDED EXPENSE CATEGORY

Our concern here is with a clearly mandatory, nondiscretionary duty. The terms of 26 O.S.1981 § 2–117[7] provide that in counties having fewer than 17,500 registered voters, "the secretary shall employ a chief clerk and such other employees as are necessary to perform the duties of the county election board." The legislature's choice of the word "shall" is of significance because that word usually is given its common meaning of "must", which implies a command or mandate.[8] It rules out the

---

**1.** Our pronouncement today reaches *but one* point in controversy: the alleged error in the Board's withdrawal of funding for the position of county election board's chief clerk. *No other error is advanced* by the appellants. Philpott, the then county election board's chief clerk, pressed *no* claim in her individual capacity. She merely joined Morton's quest (in the latter's capacity as secretary of the election board) for restoration of funds to pay the salary. Because Philpott's standing as a proper party in this quest for *purely budgetary relief* was challenged neither below nor on appeal, we express no view on the propriety of her joinder in this proceeding as a party plaintiff/appellant.

**2.** *State v. Oklahoma Public Welfare Comm'n,* 196 Okl. 586, 167 P.2d 71, 72 [1946]; *Witt v. Wentz,* 142 Okl. 128, 286 P. 796, 797 [1930]; see also *Woolen v. Coffman,* Okl.Cr., 676 P.2d 1375, 1377 [1984].

**3.** The terms of 12 O.S.1981 § 1451 provide in pertinent part:
"The writ of *mandamus may be issued* by the Supreme Court or the district court ... to any inferior tribunal, corporation, board or person, *to compel the performance of any act which the law* specially *enjoins as a duty,* resulting from an office, trust or station; *but* though it may require an inferior tribunal to exercise its judgment or proceed to the discharge of any of its functions, it *cannot control judicial discretion.*" [Emphasis added.]
The terms of 12 O.S.1981 § 1452 are:
"This writ may not be issued in any case where there is a plain and adequate remedy in

the ordinary course of the law. It may be issued on the information of the party beneficially interested."

**4.** *McDonald v. Oklahoma Real Estate Comm'n,* Okl., 268 P.2d 263, 264 [1954]; *Witt v. Wentz, supra* note 2 286 P. at 797; see also *Woolen v. Coffman, supra* note 2 at 1377.

**5.** Mandamus will issue to compel performance of a mandatory duty. In *State v. Holder,* Okl., 279 P.2d 1098, 1100 [1955], the court held that where the county excise board is statutorily mandated to appropriate funds for crippled children, the board may be compelled to perform this duty.

**6.** *Summey v. Tisdale,* Okl., 658 P.2d 464, 469 [1982]; *Hess v. Excise Bd. of McCurtain County,* Okl., 698 P.2d 930, 931 [1985]; *Board of Trustees of Firemen's R. & P. Fund v. Cotton,* Okl., 208 Okl. 421, 256 P.2d 802, 805 [1953].

**7.** The terms of 26 O.S.1981 § 2–117 provide in pertinent part:
"* * * In counties having fewer than seventeen thousand five hundred registered voters, the secretary [of the county election board] *shall employ a chief clerk* and such other employees as are necessary to perform the duties of the county election board. * * *" [Emphasis added.]

**8.** *Hess v. Excise Bd. of McCurtain County, supra* note 6 at 932–933; *Sneed v. Sneed,* Okl., 585 P.2d 1363, 1364 [1978].

idea of discretion.[9]

■ In contrast, the statute authorizing the appointment of a county purchasing agent, 19 O.S.Supp.1983 § 1500,[10] provides a built-in substitute for that position's holder. If the job remains unfilled, the mandated duties of the purchasing agent must, by force of law, be discharged by the county clerk. Because the functions of the agent's position *may* be exercised by an elected county official, it is crystal-clear the statute authorizes but *does not command that a separately-funded position be established.*

■ If the county suffers a revenue shortfall, the excise board is authorized by the terms of 68 O.S.1981 § 2487(5)[11] to reduce the county budget to meet the revenue loss.[12] The excise board must first trim expense items which are statutorily *authorized but not required.* Next in line for reduction are items whose funding is *required by the legislature but not by the constitution.*[13] If further budget shrinkage be necessary, the excise board may then reduce expense items for *constitutionally mandated governmental functions.* This process calls for discretion only when competing personnel or other budgetary items fall into the very same class and degree. Discretion is not implicated when items stand in separate classes or in the same class but in some differing degree. Although the positions of county purchasing agent and county election board's chief clerk are statutorily established in absolute terms, it is the presence of a substitutional component built into the former that places it in a lower degree of priority than the latter.

■ In short, in the process of reducing county budgets to meet revenue shortfall, preference for funding should be given to a statutorily mandated position of county election board's chief clerk, whose specific duties no one else is required or permitted to perform, over that of a county purchasing agent, whose responsibilities, when no one holds that job, must, by force of law, be discharged by an elected official—the county clerk. We hence hold that the Board should not have withdrawn funding for the county election board's chief clerk position while the purchasing agent's job remained in the funded expense category.

## III

### MOOTNESS ISSUE

■ While mandamus would ordinarily be available in a case like this one to re-

---

9. *State v. Hunt,* Okl., 286 P.2d 1088 (syllabus ¶ 3) [1955].

10. The terms of 19 O.S.Supp.1983 § 1500 are: "A. The *county clerk* of each county *or an employee of that office* so designated by the county clerk *shall be the county purchasing agent.* Provided, in counties having a county budget board created pursuant to Sections 1402 et seq. of Title 19 of the Oklahoma Statutes, said board *may,* upon an affirmative vote of a majority of all the board members then in office, *appoint a county purchasing agent.* In the event the board does not appoint a county purchasing agent the *county clerk or an employee of that office* so designated by the county clerk *shall be the county purchasing agent."* [Emphasis added.]

11. The terms of 68 O.S.1981 § 2487(5) provide: "If the total of the several items of estimated needs for lawful purposes as heretofore ascertained is within the income and revenue lawfully available, the excise board shall approve the same by items and compute the levy required. If said total exceed the means provided to finance the same, the excise board *will proceed to revise the same by reducing items,*

*in whole or in part, in the following order:* (a) first apply such revision by reduction of items for governmental functions *merely authorized* but not required; (b) if further reduction be necessary, second, by reduction of *items required by the Legislature* but not within Constitutional requirement; (c) if still further reduction be necessary and no other items remain, third, by reduction of *items for Constitutional governmental functions* until the total thereof be within the income and revenue provided. At the option of the excise board, the governing board may collaborate in such reductions; but the final order shall be that of the County Excise Board."* [Emphasis added.]

12. The county excise board should resort to the statutory budget reduction scheme prescribed by 68 O.S.1981 § 2487(5) only when the county's total estimate of needs exceeds the county's income that is lawfully available. *Rogers v. Excise Bd. of Greer County,* Okl., 701 P.2d 754, 759 [1984].

13. *Little v. County Excise Board of Marshall County,* 161 Okl. 40, 16 P.2d 1080, 1081 (syllabus ¶ 4) [1932]; *Humphrey v. Denney,* Okl., 757 P.2d 833, 835 [1988].

store funding for the election board's chief clerk position, it cannot lie here because it is now too late to affect the county's past (1988–1989) fiscal year budget by requiring the Board to restore funding for the period during which the contested expense item was wrongly withheld. Any attempt to adjust the 1988–1989 fiscal year budget after its expiration would create an impermissible public finance practice.[14] The Board cannot restore funding for the contested personnel expense item to affect the remainder of a fiscal year which has already ended; nor can the election board secretary pay for the expenses incurred in one fiscal year with revenues from a subsequent year. The time during which effective relief could be afforded has passed. For all practical purposes, the dispositive issue in this appeal is now moot.

■ As a general rule, this court will not decide abstract or hypothetical questions that are not directly related to the granting of actual relief.[15] While no relief may be afforded today, we have nonetheless settled the controversy pressed for our review. It presents an important public-law question which challenges a governmental action that is "capable of repetition, yet evading review." [16]

The trial court's order denying the writ is accordingly affirmed.

All Justices concur.

---

**14.** *Abel v. Madden,* Okl., 738 P.2d 1340, 1343, n. 6 [1987]; *Rogers v. Excise Bd. of Greer County, supra* note 12 at [761].

**15.** *Rogers v. Excise Bd. of Greer County, supra* note 12 at 761.

**16.** *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 [1911]; *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 [1973]; see also *In re*

*D.B.W.,* Okl., 616 P.2d 1149, 1151 [1980]; *Federal Land Bank of Wichita v. Story,* Okl., 756 P.2d 588, 589 [1988]. This court is the final arbiter of whether a case is moot and should be dismissed or be decided upon its merits. *Abel v. Madden, supra* note 14 at 1343; *Rogers v. Excise Bd. of Greer County,* supra note 12 at 761; *Lawrence v. Cleveland County Home Loan Auth.,* Okl., 626 P.2d 314, 315 [1981]; *Payne v. Jones,* 193 Okl. 609, 146 P.2d 113, 114 (syllabus ¶ 1) [1944].